Mr. Friedman They please the court morning. My name is Howard Friedman and I represent the plaintiff appellants in this appeal from the dismissal of a collective action complaint for failure to state a cause of action upon which relief may be granted. This appeal returns to this court after an earlier remand so that the district court could enter a final judgment disposing of the claims of the opt-in plaintiffs. I reserve five minutes for my rebuttal. Palm Beach County competes against private golf clubs and resorts by operating world-class golf courses for a profit business. Just like its profit or its private market competitors, the county must hire workers to provide services for the purposes of enhancing and improving the experience for its customers. These workers, our plaintiffs, delivered golf carts, cleaned them, maintained the grounds, retrieved balls, set the golf carts up, and otherwise interacted with the customers of the golf course and provided other manual efforts necessary to maintain the golf course. All of these workers, as has been alleged in the complaint, were assigned specific duties. They cannot choose what duties that they were going to do. They were required to clock in when they went to work and they were required to also follow strict guidance or strict rules with regard to the performance of their duties. Your clients responded to an advertisement, right, notice that volunteers were needed for the Palm Beach Parks and Recreation golf courses, right? I would say yes. I'm not sure if all of them did versus perhaps word-of-mouth. Yeah, and it was very plain. Volunteers needed, unlimited. What we need are volunteer service course rangers, driving range attendants, bag drop attendants, hours varied, night and weekends preferred. Volunteers enjoy being outdoor, getting to know others with similar interests, reduce fees to play and practice golf. Sure, except what we know is that the law basically and the case law that has interpreted suggests also that they can't waive certain rights under the FLSA and even though they went ahead and perhaps worked as volunteers for years and enjoyed the benefits of reduced fees that the county had promised them. But if they were provided in-kind compensation, which is what we've alleged in the complaint, and they've actually been promised as we've alleged in the for those acts, then by law they can't be deemed volunteers. Well, they can be provided, a public agency volunteer can be provided reasonable benefits. Well, that's true, but we don't get there if in fact, as we've alleged in our complaint, that these particular plaintiffs are in fact employees, they're not volunteers. We've alleged that they have received in-kind compensation and more they received the in-kind compensation, compensation that rose to the level, quite frankly, of a possible taxable obligation that they would have to the IRS. And as a result of that, again, at the pleading stage is where we're at. As a result of that, we have pled sufficiently, at least on its face, that they aren't going to go ahead and be a part of the volunteer exception as the county wishes to go ahead and argue. But if need be, if we get into whether or not then they were receiving a nominal fee or a reasonable benefit, as we have stated in our brief, these kinds of things do not fall within what was contemplated under the regulation, under the statute, based upon the facts that we've alleged in our particular complaint. It seems to me that reduced golf fees are just not wages in another form under the economic reality test. Well, if we're going to get to the economic reality test, again, we believe that we don't have to since... Well, I mean, I thought we were talking about whether they were volunteers or not, okay? You know, let's be clear about where we are, okay? Is that what we're talking about? Oh, yes. If I'm understanding your question, the answer is yes. Our position is that they're not volunteers. You said before we even get to the reasonable benefits for their services, that they weren't volunteers. Correct. Let's talk about whether they were. All right, well, if they were, number one, I believe that we would have to ignore the fact that it has been pled that they have been promised and received in-kind compensation. So with that being said, if we're now going to go ahead and look at the economic realities test and determine whether or not they have received some sort of a reasonable benefit, we would look at, number one, the fact that these aren't the kinds of reasonable benefits that the Congress contemplated to encourage volunteers. It certainly didn't encourage or pass a law to encourage people to volunteer for a profit-making company that would go ahead or agency such as Palm Beach County to compete with other companies such as a private golf course and give them the competitive edge by virtue of having employees come and work for them and somehow title them. I think that Congress would not have wanted to allow a county to operate public golf courses that are much more accessible to people of limited means than private golf clubs that you're describing as the competitors. But those aren't the facts of our case, not what's been alleged. In this instance, the discount is from roughly a $96 round of golf down to $5, which is a $91 discount or 95% discount. That's the first thing. So it's not as if this is a golf course. I don't know what that has to do with whether they were competitors, whether the object of Congress to allow a public agency to compete with private golf courses. I don't understand the connection between what you just said and what you earlier said. I apologize. I don't understand the question either. I apologize. But what we're talking about is we're talking about the county is competing with world-class golf courses. Yeah, making golf available to the public and people of more limited means than ordinarily can gain access to the kinds of private clubs that have golf. Are you referring to the plaintiffs themselves or the public? Because the public still has to pay in excess of $100 per round of golf. Yeah, what do they have to pay to join a private golf course? Sometimes a lot. Sometimes you have these semi-private golf courses or golf courses to where they can go ahead and just simply pay the greens fees to go ahead and play. But I guess we don't believe and the plaintiffs don't believe that paying $90 or $96 per round of golf is something that is accessible to everybody. It's accessible to them because they are getting a $75 per round of golf. And as we've alleged in our in the complaint that... But you're not disputing that a public golf course in Palm Beach that provides access to 18 holes at $95 or $96 doesn't provide a real opportunity for people who otherwise couldn't touch a private club in Palm Beach County by way of cost. So that's really not what this debate is about. I don't believe so. All right, so why don't you zero in on the heart of your argument for us if you would. Sure. The heart of our argument is that the Palm Beach County has these employees, these plaintiffs, and they are providing them in-kind benefits that according to the law, I mean we have the Alamo... I don't want to call them attendants. I'm sorry. They're attendants and we're gonna decide whether they're employees or the Alamo Foundation case as an example, where the courts found that those particular volunteers who didn't even want to get paid were deemed to be employees and protected under the FLSA because they were given, among other things, they were given the ability to stay in a hotel room for lodging that wasn't being used to begin with. And recently, I believe, in the case of Raina Lana, in that particular case, the claimed volunteers were also protected under the FLSA when they, who were volunteering at a consignment shop, were given the mere opportunity to shop an hour earlier than the general public. So this isn't like Alamo. This isn't food, shelter, clothing, transportation, medical benefits. This is nothing like that. This is reduced fees for golfing, right? Correct. It's, which amounts to, as we put in the brief, they had to work seven hours per week in order to get unlimited rounds of golf. And one round of golf means that they're making $13 per hour based upon that analysis. If you play, as we've alleged, a plaintiff played four rounds of golf per week, that's $52. The 31 discounted rounds of golf valued at $2,821, or about $74 a month, right? Under that analysis, if we're getting to now the economic reality analysis, which I would say, again, that's how we have to decide whether this is compensation or not, right? Perhaps, and I say it that way only because at this stage we've been denied the opportunity to conduct any discovery whatsoever. The district court, as an example, wanted to compare that to other benefits, such as health insurance that perhaps the county is paying towards others, and other commonly offered benefits to other agency or other employees. There's been no discovery that's been allowed to go ahead and get to that point at this point in time because it was dismissed without the Let's hear from the counsel. Good morning, your honors, and may it please the court. My name is Aniley Cure and I represent Palm Beach County, the appellee in this case. Your honors, there are three reasons why this court should affirm the district court's dismissal with prejudice of the second amended complaint. First and foremost, dismissal is proper at the motion to dismiss stage, and the 11th Circuit has previously held that a totality of the circumstances analysis can be done based on the allegations in the complaint at this very stage in the case of Freeman versus Key Largo. Second, conducting such an analysis, a totality of the circumstances analysis based on the facts in the second amended complaint and factors previously looked at by other courts, there is only one decision that can be reached, which is that these individuals were volunteers and there was no employee-employer relationship, which is a prerequisite to the FLSA. And third and foremost, as a matter of law, a volunteer for a public agency who is someone related to what they do as a volunteer and does not receive any sums of money at all, instead pays money out of their own pocket, should not be deemed an employee based on how much of that benefit the individual himself can use. Did they receive tips? It is alleged in the complaint that there was a tip jar, but it does not say whether they received tips, amount of tips, and that is not before the complaint other than to say a tip jar was taken away. That is the allegation in the What inference are we to draw from the fact that there was a tip jar that ultimately was taken away during COVID for reasons of health, but what inference do you think we can fairly draw in a manner most favorable to the non-moving party from the fact that there was a tip jar available, at least for some of this period of time? That at least at some point in time, perhaps they received tips or there was the availability of tips. I'm not entirely sure. Does that bear on the analysis here? It does not, Your Honor. Whether they were volunteers or not. It does not, Your Honor. Tell me why not. Because they're talking about the benefit received from the county and from their volunteer status and the county has nothing to do with the tips. It was not something that the county provided. It's not anywhere mentioned in the volunteer flyers that the county put out seeking volunteers. There's no mention of availability for tips. So I would argue, Your Honor, that no, that does not change. Are you suggesting that the attendants put the tip jar out themselves? I don't know. That's not in the amended complaint, Your Honor. I understand. And that's why I'm just asking you what we're supposed to infer from the bald pleadings themselves, because we're not here on a motion for summary judgment. We're here ad ab initio, right off the bat, on a motion to dismiss. I believe that what can be. Something is mentioned about a tip jar and not a whole bunch. Just that there was apparently a tip jar and it was taken away. That is the only allegation in the complaint. But I still do not believe that that raises to the, that that changes the character of whether there were volunteers or employees under this context. Would it have changed if they alleged that the county put out tip jars regularly as a means to add to. Some benefit to the attendance. I do not only took it away because of COVID. I do not believe so, Your Honor. Why not? It wouldn't have changed because when you look at the totality of the circumstances and all of the other allegations in the complaint, um, that analysis does not change. For example, if I may, uh, one of the things that the 11th circuit has said is a keystone, a touchstone of the economic reality test is the employee's economic dependence on the benefit received here. The benefit received as chief judge prior pointed out is not food is not shelter is not clothing such as an Alamo. The benefit received can't be monetized, which the lower court judge, judge Reinhart found it's. Plainly a benefit to play reduced golf, which is a leisurely activity. Second, there's no corrosion. That seems to be a big, uh, point and factor that the courts focus on when making this totality of the circumstances analysis plaintiffs admit in the second amended complaint in paragraph 28 that they responded, they responded, they initiated, uh, two flyers. They came to the county and said, I saw your flyers. I'd like to volunteer. And the, and, um, another factor that is looked at in the totality of the circumstances and again, can be found within the allegations of the second amended complaint is the understanding of the nature of the relationship. The court in Brown said that that was a big factor here. As chief judge prior pointed out, the word volunteers appears no less than four times within the ads that were put out. The volunteers only had to have one seven hour shift in order to enjoy this unlimited, supposedly unlimited. We'll get to that, um, benefit and, and they volunteered for many years. Uh, Adams in paragraph 13 states, he volunteered for four, for four years, Shaw for seven years, Casimir for four years, all without payment. So that goes to the nature of the relationship can be analyzed by the facts in the second amended complaint as one of a volunteer. And then there was no promise or reasonable expectation of compensation. Um, Mr. Friedman did argue that they, they were promised this unlimited benefit and that they expected this unlimited benefit. Thankfully for this court, the court in Brown has already looked at what was promised and, and what a promise actually means. What they were told is you may play and they admit subject to availability, subject to certain days and times when it's available. It is not a promise that you will play. It is a promise that if there's no one else playing, then perhaps you can play. So that's no different than in Brown when the teachers told Mr. Brown, we are going to apply for the stipend and if we get it, we will pay you. Well, you are volunteer and if there's available space, then you can use that. So this is, there's no promise of compensation. Likewise, there's, there can be no objective, um, objectively reasonable expectation of compensation. They respond, they responded to ads that said volunteers and they, um, the ads as well as what they were told is this is subject to availability. So I think that forgoes their, uh, this unlimited potential value that could have been, um, worth, you know, hundreds of dollars when you look at the economic realities as alleged in the second amended complaint and notably, yes. Under the department of leg labor regulations, a volunteer is an individual who performs hours of service for a public agency for civic charitable or humanitarian purposes. Now here, the plaintiffs contend that they had no such purpose, but how do we evaluate that? Is it an objective test or a subjective test? Can we decide it on the face of the complaint? I think you may, uh, judge prior, there is no allegation one way or the other in the second amended complaint regarding their purpose. So it's not that they're saying I was not there for a civic charitable or a humanitarian purpose. That's not alleged in the second amended complaint. And I believe that the case of Toronto addressed this very same subject in the context of, um, firefighters and said that it needs to be evaluated objectively. So I think that that is an objective standard and objectively here, when you look at the actual ads that were put out, it does say, enjoy being outdoors, getting to know others that enjoy the same, uh, uh, the interest as you and reduce golf. So, um, objectively, I believe that you can get to, there is a civic purpose. It is a civic organization. They're like the regulatory definition. Our sister circuits have said, we look at that in a common sense manner, considering the totality of the circumstances. Oh, is that the answer? Uh, are you saying that's an objective inquiry? Correct. Your honor, it is common. The definition of volunteer is applied in a common sense way. And, um, and, and objectively as the Toronto court has instructed us. And I wanted to mention, I think it's notable that they had to pay county, never gave them any money. They still had to pay $5. And in the case of Williams v Strickland, um, the court said it is a strong indication that in kind benefits in exchange for work were not received because in that case, it was a Salvation Army case. In that case, the plaintiffs had to apply for food stamps and apply for general assistance benefits and turn those over to offset the cost of their, their rehabilitative services here too. They have to turn over money to offset the cost of the benefit that they're receiving. Um, and it is another factor that the courts have looked at in the totality of the circumstances, which can be decided on the face of the complaint is that there was no, um, that this was not based on productivity. It was no quid pro quo. It was not tied. And you did have to volunteer a minimum of seven hours a week. However, the 1993 DOL opinion has in that case, the volunteers, the firemen volunteers had to volunteer 24 hours a month. And if they volunteered 24 hours a month, they received a hundred dollar monthly stipend that court found that that did not take them out of that DOL wage. And our opinion found that that did not take them out of the volunteer realm. And then of course, if you look at the actual benefit received, and I know that my opposing counsel will say, look at the potential benefit, but, um, 29 five, five, three, one Oh six F instructs us to look at the actual benefit received in light of the totality of the circumstances. And as judge, uh, chief judge William prior has expressed, it does not raise to the level under any of them. The, the month, the, when you amortize the benefits received over the years that they served, they are all well below, well below other, uh, benefits of these, that this court has upheld such as the $2,114 plus mileage that was allowed in the purdum case. And just in this circuit, judge Altenaga stated in 2016 that $3,038 for a high school, um, football coach was a nominal fee. And I, I wanted to this idea that depending on what, how much an individual uses a benefit changes them from a volunteer to an employee, I think is, is one that goes contrary to the purposes of the FLSA, which stated in the regulations is not, not to impede volunteerism for public agencies. If a public agency has to question, if I let them golf too much, I now will have to pay back wages that's going to impede the use of volunteering and allow an individual, uh, to volunteer. And, uh, I know that in the regulation specifically 29 CFR 553106 D individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform services period. And then it goes on to say benefits would be considered reasonable. For example, when they involve inclusion of individual volunteers in group plans, pension plans, et cetera, could you imagine, could you imagine a world where you have a healthy volunteer and you have a sick volunteer, healthy volunteer never takes advantage of the benefit of health insurance because he does not need to, the sick volunteer goes to the doctor often and uses the benefit of the health insurance. And now we're going to say, well, that person is no longer a volunteer because the, they monetize the benefit. I don't think that's the intent of the FLSA. I don't think that's how this test should be applied. I think it needs to be applied in a common sense way. You golfed, you, you volunteered at a golf course, you received the reasonable benefit of golf. And I think it's notable and worth mentioning, not binding on this circuit at all, but there is an Oregon statute and that is 653020. The Oregon statute is patterned after the FLSA and it exempts, it exempts from the Oregon definition of employee getting far field when we're talking about an Oregon statute. I understand, but bear with me one quick second. It exempts from, from, uh, from the definition of employees, individuals who volunteer as golf course marshals and the individual in exchange receives no wage other than golf passes. Okay. That's great. No, I didn't. It might be clear what the answer is in Oregon. Thank you. Miss cure. I think we understand your case unless you have anything else to add. Thank you so much for the privilege and your time. Mr. Friedman. Thank you. Um, and for whatever it is worth with regard to the site of the Oregon statute, we received notice of that, the supplement last night. All right. And then I, I will move on from that, but, um, I do want to make it clear because the issue of the tip jar tips as is alleged in the complaint and perhaps what we would also further discover once the statements and discovery is done with regard to, um, uh, the plaintiffs and other opt-in, uh, uh, plaintiffs, what the motivation was for answering that ad as an example, the motivation clearly to do is be motivated in part by the civic or charitable reasons. Well, um, perhaps, and I, I agree with that, except there's nothing in the ad that says anything about tips. I I'm sorry. I didn't hear you. Nothing in the ad that says anything about tips. No, but in the same, no allegation that they were promised tips. Although that's why I think I responded that although yes, I'm sure that the plaintiffs responded to the ads, there's also these people who had also gone ahead and, and signed up because their friend who is also going ahead and being able to play golf has gone ahead and done that. But the bottom line is that the motivation is clearly the ability to go ahead and play golf at such a discounted rate that it's basically free and at a course that they otherwise would not be able to go ahead and play at, and by the way, also receive tips, and it's hard to imagine that the Congress, when going ahead and is talking about people who are going ahead and receiving such a discount and playing golf because they're providing such a civic and humanitarian, uh, task, um, to society when in fact, what they're doing is they're really going ahead and helping a for-profit business compete with other for-profit businesses. Um, so in this instance, um, I don't see anything in the statute. That limits the public agency, um, using volunteers in only a not-for-profit context. True, except though the regulation then that talks about and defines volunteer is what we are really going with, which I believe under the Chevron deference, we are looking at in the definition of volunteer. The fact that these plaintiffs were promised a benefit takes them out of the definition. They can't be, they can't be volunteers. To do with the, you keep harping on the for-profit status. My point is, so what? Um, I wouldn't debate, I wouldn't disagree with you. I mean, it is just a fact of this particular case, but whether it's, they are for-profit or not, the fact is, is that they, these just trying to figure out how that ties to the statute or regulation. I, I don't see anything, any, any, anything really material about that. Well, the, I guess the public agencies are entitled to use volunteers and to provide them reasonable, um, benefits, uh, that are not compensation covered by the act, uh, that's an exception. Uh, and, and I don't see anything in the law that, uh, limits the public agency's use of that based on its for-profit or not for-profit status. There is nothing in there. Although I would say that when taking a look at and trying to determine whether or not these volunteers or these people, these plaintiffs were providing services or donating their services for a civic or humanitarian reason, perhaps that is something to, to consider. Um, and I guess it would be on a case to case, depending upon the nature of the business or the nature of the agency, um, which these people are claimed to be volunteers at. In this instance, all we're saying is, is that it's a, um, entity which is it's hard to imagine that what was intended to try to encourage volunteerism for a civic and humanitarian reasons, that it was this idea of, um, helping better, I guess, the, the, this kind of a business and incurred and, and offering, um, these kinds of discounts that these people can play golf, um, and, and basically when, when, when we said unlimited, let's this, this, this ability to play golf, um, is, is, is unlimited for that week, so long as they go ahead and work seven hours, a number of hours a day. Well, well, well, true, but you can work one shift and then basically play every, every day that you're there for $5 per round. Okay. Um, Scott, you, Mr. Friedman, I think we understand your case. Uh, we're going to move to the last one. Thank you.